UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TRAILSTAR LLC, )<br>)<br>        *Plaintiff*, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>        *Defendant*. )<br>) | Court No. 24-00021 |

## COMPLAINT

Pursuant to Rule 3(a)(3) of the Rules of the United States Court of International Trade, TRAILSTAR LLC ("TRAILSTAR" or "Plaintiff"), by and through its undersigned attorneys, alleges and states as follows:

### I. ADMINISTRATIVE DECISION TO BE REVIEWED

1. This is an appeal from U.S. Customs and Border Protection's ("CBP") final affirmative determination of evasion, issued under 19 U.S.C. § 1517(f), including its initial determination issued under 19 U.S.C. § 1517(c), pursuant to the Enforce and Protect Act ("EAPA") Consolidated Case Number 7459. This determination involved allegations of evasion of the antidumping and countervailing duty ("AD/CVD") Orders on steel trailer wheels 12 to 16.5 inches in diameter ("steel trailer wheels") from the People's Republic of China ("China"). *Certain Steel Wheels 12 to 16.5 Inches from the People's Republic of China*, 84 Fed. Reg. 45,952 (Sept. 3, 2019) ("*AD/CVD Orders*"). Wheel rims manufactured in Thailand from rectangular steel plates (*i.e.*, wheel boards) were assembled to discs from China, and processed into steel trailer wheels in Thailand by Asia Wheel Co., Ltd. ("Asia Wheel"). CBP determined that Plaintiff evaded the *AD/CVD Orders* when Plaintiff entered steel trailer wheels produced by Asia Wheel in Thailand as non-subject merchandise.

1

2. Specifically, on July 15, 2020, CBP issued a Notice of Initiation of Investigation and Interim Measures ("Interim Measures") taken as to TRAILSTAR, TexTrail, Inc. ("TexTrail"), and Lionshead Specialty Tire and Wheel LLC ("Lionshead") (collectively, the "Importers") concerning evasion of the *AD/CVD Orders*. CBP's Interim Measures were based on an allegation of evasion through transshipment by Dexstar Wheel Division of Americana Development, Inc. ("Dexstar"), a domestic manufacturer of steel wheels.

3. On August 7, 2023, CBP's Trade Remedy and Law Enforcement Directorate ("TRLED") issued its Notice of Determination as to Evasion – EAPA Consolidated Case Number 7459 ("TRLED Determination").

4. On December 15, 2023, CBP's Office of Trade, Regulations & Rulings ("RR") affirmed TRLED's Determination. *See* Administrative Review Determination in EAPA Consolidated Case No. 7459, CBP's Office of Trade Regulations & Rulings (Dec. 15, 2023) ("Dec. 15, 2023, RR Final Decision").

5. CBP's EAPA decision covers entries of steel trailer wheels made by Plaintiff from March 19, 2019, through the pendency of the investigation.

## II.     JURISDICTION

6. Plaintiff brings this action pursuant to Section 517(g) of the Tariff Act of 1930, as amended by the Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"). Plaintiff contests CBP's EAPA Determination pursuant to 19 U.S.C. § 1517(g).

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), because this appeal is taken pursuant to 19 U.S.C. § 1517 within 30 business days of the date of the Dec. 15, 2023, RR Final Decision.

### III. STANDING

8. TRAILSTAR is a company organized under the laws of the United States. TRAILSTAR imported steel trailer wheels from Thailand. TRAILSTAR participated in the EAPA investigation by filing questionnaire responses, written comments, and an administrative appeal. TRAILSTAR is an interested party with the meaning of 19 U.S.C. § 1517(a)(6) and "a person determined to have entered such covered merchandise through evasion" thereby permitted to "seek judicial review of the {EAPA} determination . . . in the United States Court of International Trade." 19 U.S.C. § 1517(g).

9. Following CBP's Interim Measures and subsequent affirmative determination as to evasion, Plaintiff became subject to AD/CVD on entries covered by the EAPA investigation time frame and is therefore adversely affected or aggrieved by agency action within the meaning of Section 702 of the Administrative Procedure Act, as amended, 5 U.S.C. § 702. Accordingly, Plaintiff TRAILSTAR has standing to commence this action pursuant to 28 U.S.C. § 2631(i).

### IV. TIMELINESS OF THIS ACTION

10. CBP's Office of Trade, Regulations, and Rulings ("ORR") issued a Final Administrative Determination on December 15, 2023. This Complaint and the concurrently filed Summons are timely filed within 30 business days after the completion of CBP's review, completed on December 15, 2023. Accordingly, Plaintiff has commenced this action within the statutorily-prescribed time limits specified in 19 U.S.C. § 1517(g)(1).

### V. STATEMENT OF FACTS

#### A. AD/CVD Orders on Steel Trailer Wheels from China

11. On September 3, 2019, the U.S. Department of Commerce ("Commerce") issued *AD/CVD Orders*. 84 Fed. Reg. 45,952. Its scope, in relevant part, provides: "The scope includes

rims, discs, and wheels that have been further processed in a third country, including, but not limited to, the painting of wheels from China and the welding and painting of rims and discs from China to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the orders if performed in China." *Id.* at 45,954.

12. Commerce issued a scope memo including an exhaustive discussion of whether the third country assembly covered wheels made from rims <u>and</u> discs from China, or whether it covered wheels made from rims <u>or</u> discs. Commerce Memorandum, Case Nos. A-570-090 & C-570-091 (July 1, 2019) ("INV Scope Memo"). Commerce determined that the scope "language explicitly identified both rims <u>and</u> discs and the record is otherwise absent of any language supporting the assertion that the intent of this language was to cover instances of third country assembly where only one such constituent part is present." *Id*. Commerce found the scope language "sufficiently conveys the concept that third-country processing of a steel wheel must be of rims <u>and</u> discs produced in China", or in other words, "<u>only if all constituent rim and disc parts to form a steel wheel are from China does the order apply{.}</u>" *Id*. (emphasis added).

13. Commerce declined to amend the scope in the INV Scope Memo to include third country processing of either rims <u>or</u> discs produced in China because doing so would be "intentionally and selectively expansionary and not consistent with the plain meaning of the word 'and.'" *Id*.

14. As a result, steel trailer wheels processed in a third country where either the disc or rim are not of Chinese origin were explicitly excluded from the scope of the existing *AD/CVD Orders* and there was no indication that Commerce would later reverse its prior guidance to find the "the plain language of the scope is ambiguous as to the status of finished wheels processed in

a third country from a mix of one wheel component sourced from China and one component originating from a third country." TRLED Determination at 2.

### B. EAPA Proceeding

#### *i.    CBP's EAPA Investigation*

15. On March 11, 2020, Dexstar filed an EAPA allegation with CBP regarding the evasion of AD/CVD duties by the Importers. Interim Measures at 2. Dexstar alleged that the Importers' imports were from the Chinese wheel producer, Zhejiang Jingu Company Limited ("Jingu") and transshipped through Asia Wheel, Jingu's affiliate in Thailand. *Id*.

16. On May 11, 2020, CBP issued a CBP Form 28, Request for Information ("CF-28") to TRAILSTAR requesting supporting documentation related to the country of origin of a certain entry. While CBP characterizes the CF-28 request as issued as part of the EAPA investigation process, the request did not reference the ongoing EAPA investigation. TRAILSTAR timely responded to the CF-28. *Id*. at 5. TRAILSTAR had no reason to believe that the CF-28 was part of an ongoing EAPA investigation. Nor did TRAILSTAR believe that its trailer wheels imported from Thailand produced by using discs from China and rims produced in Thailand were covered by the *AD/CVD Orders* based on the plain language of the scope of the orders and the INV Scope Memo.

17. Unbeknownst to TRAILSTAR, on April 9, 2020, CBP initiated an EAPA investigation of the Importers. *Id*. The public version of Dexstar's original EAPA allegation and the CBP's EAPA initiation notice were not released to TRAILSTAR until July 2020.

18. TRAILSTAR was first notified of the EAPA investigation when CBP provided its Interim Measures on July 15, 2020, over three months after CBP initiated the EAPA investigation based on Dexstar's allegation. *Id*. In its Interim Measures, CBP consolidated the investigations,

suspended liquidation of TRAILSTAR's entries of steel trailer wheels from Thailand entered on or after April 9, 2020, and extended the liquidation of unliquidated entries entered one year before receipt of the EAPA allegation on March 19, 2019. *Id*. at 8.

19. TRAILSTAR responded to CBP's initial request for information ("RFI") in September 2020 and supplemental RFI in November 2020. TexTrail and Lionshead also fully and timely responded to CBP's RFIs.

20. In their responses, the Importers provided substantial evidence explaining that they only imported steel trailer wheels from Asia Wheel in Thailand that were produced from wheel rims manufactured in Thailand from rectangular steel plates (*i.e.*, wheel boards), assembled to discs from China, and processed into steel trailer wheels in Thailand, and which were "standard" wheels not dual trailer wheels. The Importers provided an analysis of the scope of the *AD/CVD Orders*, including the INV Scope Memo. At the time of entry, Commerce had explicitly ruled that wheels were covered by the scope of the *AD/CVD Orders* only if <u>both</u> the rims <u>and</u> discs were produced in China.

21. The Importers provided extensive record evidence, including photos and supporting documentation of site visits to Asia Wheel demonstrating that they reasonably relied on the clear statements from Commerce in the INV Scope Memo that steel trailer wheels had to be processed in a third country from both discs and rims from China to be within the scope of the *AD/CVD Orders*, resulting in TRAILSTAR understandably declaring those imports with the country of origin as Thailand.

22. Asia Wheel, as the foreign producer, responded to questionnaires issued by CBP and cooperated in a site visit, thereby corroborating the Importers' evidence of third country processing. The first that TRAILSTAR learned about this CBP site visit was when Dexstar filed

it as rebuttal factual information, and CBP specifically disallowed rebuttal to that submission. CBP failed to timely place the site visit on the record and once it was on the record, rejected the rebuttal factual information submitted by the Importers as untimely.

### ii. CBP's Covered Merchandise Referral to Commerce and Commerce's Scope Ruling

23. Although the *AD/CVD Orders* and accompanying INV Scope Memo explicitly excluded third country steel wheels produced using either rims or discs from China, CBP found that it was unable to determine whether the wheels were subject to the *AD/CVD Orders*. On December 17, 2020, CBP forwarded to Commerce a covered merchandise referral. *Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Notice of Covered Merchandise Referral*, 86 Fed. Reg. 10,245 (Feb. 19, 2021) ("*EAPA Referral*"). As a result, the EAPA investigation was stayed pursuant to 19 C.F.R. § 165.16(d).

24. Because the EAPA Referral requested a determination on merchandise identified in a previously submitted scope ruling request filed by Asia Wheel on November 10, 2020, Commerce determined it will address the covered merchandise referral and Asia Wheel's scope ruling request in the ongoing scope segment of the proceeding. *Id.* at 10,246. On March 22, 2021, Commerce initiated a formal scope inquiry pursuant to 19 C.F.R. § 351.225(e). U.S. Department of Commerce Memorandum Preliminary Scope Ruling, Case Nos. A-570-090 & C-570-091 (Aug. 25, 2022), at 2 ("Preliminary Scope Ruling").

25. On August 25, 2022, Commerce issued a preliminary scope ruling. *Id*. On April 11, 2023, Commerce issued a final scope ruling pertaining to the covered merchandise referral of certain steel wheels 12 to 16.5 inches in diameter from China, in which it found that trailer wheels manufactured by so-called Method A, meaning "Trailer wheels manufactured using discs from China and rims produced in Thailand from rectangular steel plates from China or a third

country," were within the scope of the *AD/CVD Orders*. U.S. Department of Commerce Memorandum Final Scope Ruling, Case Nos. A-570-090 & C-570-091 (Apr. 11, 2023), at 14-15 ("Final Scope Ruling"). Commerce characterized the scope as ambiguous despite having found during the investigations that the scope required that both the rim and disc from China be processed in the third country. The Importers and Asia Wheel strongly disagree with Commerce's Final Scope Ruling and appealed that ruling to this Court. *Asia Wheel Co.*, *Ltd. v. United States*, Consol. Ct. No. 23-00096 SAV.

### iii. Resumption of EAPA Investigation and EAPA Determination

26. On May 12, 2023, CBP notified the Importers that the EAPA investigation was no longer stayed and extended the final determination of the EAPA investigation to July 31, 2023. TRAILSTAR filed its written submission on May 30, 2023, and rebuttal comments on June 14, 2023. TRAILSTAR on July 27, 2023, made a subsequent authorities submission advising that the U.S. Court of Appeals for the Federal Circuit ("CAFC") ruled that CBP violates importers' due process requirements in EAPA investigations when finding duty evasion based on business proprietary information ("BPI") not disclosed to counsel under administrative protective order ("APO"), in *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250 (CAFC 2023).

27. On August 7, 2023, 7 days after the specified deadline for the final determination, CBP signed and released the public version of its final determination finding that the Importers entered the covered merchandise through evasion of the *AD/CVD Orders* by importing trailer wheels produced in Thailand using either rims or discs from China. TRLED Determination at 2. The confidential version of the final determination or any other documents on the record have never been released to TRAILSTAR and the other importers.

28.     On August 7, 2023, the TRLED Determination issued, finding that there was substantial evidence that the merchandise that the Importers had imported from Asia Wheel was covered under the *AD/CVD Orders*.

29.     On September 19, 2023, the Importers, filed a *de novo* request for review with ORR. On September 20, 2023, ORR emailed the parties to notify them of commencement of administrative review process and the assignment of case number, H334521. On December 15, 2023, ORR issued its decision affirming the TRLED Determination under 19 U.S.C. § 1517(c). Dec. 15, 2023 Final Administrative Determination at 19.

VI.     **STATEMENT OF CLAIMS**

30.     CBP's TRLED Determination and Dec. 15, 2023, RR Final Decision are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as set forth below.

## COUNT 1

31.     The facts and allegations contained in paragraphs 1 through 30 are restated and incorporated herein by reference.

32.     To reach an affirmative determination as to evasion, EAPA requires that CBP find that the entries in question are covered merchandise *when* they were entered into the customs territory of the United States.

33.     TRAILSTAR and other parties provided substantial legal and factual evidence showing that in the original AD/CVD investigations, Commerce rejected Dexstar's proposed revision to the scope language by including wheels assembled in a third country using either rims or discs from China. Final INV Scope Memo Comment 3. Commerce stated that "the existing scope language sufficiently conveys the concept that third-country processing of a steel wheel

*must* be of rims and discs produced in China" and that it "previously understood the scope language to mean what it expressly states – that both constituent parts {the disc and rim} are covered under the scope." *Id*. at 22-24 (emphasis added).

34. Under the plain language of the *AD/CVD Orders*' scope at the time of the entries during the underlying investigation, the steel trailer wheels were not subject merchandise.

35. It was unlawful for CBP to ignore Commerce's specific findings as to the scope of the *AD/CVD Orders* in the INV Scope Memo and refer the matter to Commerce for a covered merchandise referral. A covered merchandise referral is only appropriate only if "CBP cannot determine whether the merchandise described in an allegation is properly within the scope of an antidumping or countervailing duty order." 19 C.F.R. § 165.16(a). Here, Commerce had already made clear that "steel wheels assembled in a third country when either the rims or discs do not originate from China" are not within the scope. INV Scope Memo at 24.

36. CBP's decision not to apply the plain language of the scope as informed by the Final INV Scope Memo but instead to request a covered merchandise referral from Commerce and then use Commerce's Final Scope Determination to find the steel trailer wheels were covered merchandise and thus evasion occurred was arbitrary, capricious, an abuse of discretion and is otherwise not in accordance with law. In so doing, CBP also violated its statutory time period for issuing its EAPA determination.

37. In the alternative, the steel trailer wheels were not covered merchandise at the time of entry because Commerce acknowledged that the scope was ambiguous. Because the Importers did not have adequate notice until Commerce initiated the scope inquiry the importers' entries before that date are not "subject to" the *AD/CVD Orders* and, consequently, are not "covered merchandise." CBP's decision to ignore the Importers' lack of notice and Commerce's

ambiguity finding to find evasion at the time of entry was arbitrary, capricious, an abuse of discretion and is otherwise not in accordance with law.

38.  Moreover, Commerce's Final Scope Ruling has been appealed to this Court, and if invalidated on appeal, cannot lawfully provide the basis for CBP's TRLED Determination or Dec. 15, 2023 Final Administrative Determination. *Asia Wheel*, Consol. Ct. No. 23-00096 SAV.

## COUNT 2

39.  The facts and allegations contained in paragraphs 1 through 37 are restated and incorporated herein by reference.

40.  To reach an affirmative determination as to evasion, EAPA requires that CBP find that the entry in question was made by a material false statement or act or material omission.

41.  TRAILSTAR and the other parties provided substantial legal and factual evidence showing that in the original AD/CVD investigations, Commerce rejected Dexstar's proposed revision to the scope language by including wheels assembled in a third country using either rims or discs from China. Final INV Scope Memo Comment 3. Commerce stated that "the existing scope language sufficiently conveys the concept that third-country processing of a steel wheel *must* be of rims and discs produced in China" and that it "previously understood the scope language to mean what it expressly states – that both constituent parts {the disc and rim} are covered under the scope." *Id*. at 22-24 (emphasis added). TRAILSTAR used reasonable care when it imported the merchandise in accordance with this language.

42.  CBP itself could not determine the product was covered merchandise and had to make the referral to Commerce, *EAPA Referral*, 86 Fed. Reg. 10,245, and Commerce itself found the scope to be ambiguous. Final Scope Ruling at 14-15.

43. A reasonable disagreement over the scope of the *AD/CVD Orders* cannot be considered a "material and false statement or act or a material omission" within the meaning of 19 U.S.C. § 1517. *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1355 (CIT 2021) (holding that "neither the text of the EAPA statute nor 19 C.F.R. 165.1 supports Customs' statement that it does not need to establish 'any level of culpability'" to find a material false statement or omission); *Diamond Tools Tech. LLC v. United States*, 609 F. Supp. 3d 1378, 1388 n.10 (CIT 2022) ("*Diamond Tool II*") (EAPA does not "contain the term strict liability and the statute's legislative history does not indicate the application of that concept").

44. CBP's decision not to apply the plain language of the scope as informed by the Final INV Scope Memo but instead to request a covered merchandise referral from Commerce and then use Commerce's Final Scope Determination to find the products were covered merchandise and thus the entries in question were made by a material false statement or act or material omission such that evasion occurred was arbitrary, capricious, an abuse of discretion, and is otherwise not in accordance with law.

45. In the alternative, because Commerce acknowledged that the scope was ambiguous, CBP's decision to ignore the ambiguity finding and find that the entries in question were made by a material false statement or act or material omission such that evasion occurred was arbitrary, capricious, an abuse of discretion and is otherwise not in accordance with law.

## COUNT 3

46. The facts and allegations contained in paragraphs 1 through 45 are restated and incorporated herein by reference.

47. The purpose of the EAPA statute is to address issues of evasion or circumvention.

48. CBP's EAPA decision covers entries of steel trailer wheels made by Plaintiff from March 19, 2019, through the pendency of the investigation.

49. AD/CVD liability cannot apply to the entries of TRAILSTAR and other Importers until, at the earliest, March 22, 2021, when Commerce initiated the scope inquiry requested by Asia Wheel (which became the basis for Commerce's response to CBP's covered merchandise referral). Final Scope Ruling at 2. Alternatively, the appropriate retroactivity date is August 25, 2022, the date Commerce issued its Preliminary Scope Ruling.

50. Government agencies including Commerce and CBP "must provide regulated parties fair warning of the conduct {the order or regulation} prohibits or requires" to "avoid unfairness to importers." *Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 494-95 (Fed. Cir. 2020) (internal quotation marks omitted). Until the March 22, 2021 date of initiation of the scope inquiry requested by Asia Wheel, Final Scope Memo at 2, importers like TRAILSTAR were not on notice that trailer wheels comprised of Chinese rims or discs could be subject to the *Orders*. The fact that Commerce did "not foreclose a further analysis of substantial transformation" at some point in the "future" confirms the lack of requisite notice at the time the July 2019 INV Scope Memo was issued. INV Scope Memo at 24; *see Tai-Ao*, 983 F.3d at 494-95 (requirement to provide fair warning of AD/CVD applicability).

51. TRAILSTAR "relied on and followed Commerce's clear and specific instructions" in the INV Scope Memo, *Diamond Tool II*, 609 F. Supp. 3d at 1391, as well as the plain language of the scope description – which both supported that steel wheels produced in a third country (here, Thailand) into steel wheels from rims or discs produced in China were outside the scope.

52. Because TRAILSTAR did not have fair warning that the steel trailer wheels were within the scope of the *AD/CVD Orders*, CBP's determination that TRAILSTAR evaded AD/CVD and its retroactive application of AD/CVD from March 19, 2019, was arbitrary, capricious, an abuse of discretion and is otherwise not in accordance with law.

## COUNT 4

53. The facts and allegations contained in paragraphs 1 through 52 are restated and incorporated herein by reference.

54. CBP initially determined that "there was reasonable suspicion that the Importers entered Chinese-origin steel trailer wheels into the United States that were transshipped through Thailand." Interim Measures at 3. The record shows there was no transshipment, but rather third country processing. That evidence was readily available so any information provided by the allegers regarding transshipment should have been insufficient. Thus, the evidence did not support initiation or CBP's finding that there was a reasonable suspicion that covered merchandise was entered into the U.S. through evasion.

55. The burden was on Dexstar to allege evasion relating to third country processing. Commerce's Final Scope Ruling attaches AD/CVD liability as of the date of initiation of the scope investigation, except where CBP has already suspended liquidation of entries. CBP only suspended liquidation based on the EAPA allegation's false premise that there was transshipment. But for that false premise, TRAILSTAR's entries would not have been suspended and AD/CVD duty liability would attach upon notice by Commerce of the initiation of the scope inquiry.

56. CBP's initiation of the investigation and issuing interim measures was arbitrary, capricious, an abuse of discretion and is otherwise not in accordance with law.

57. Alternatively, the EAPA investigation should have ended (or a negative determination have been issued), once CBP determined that there was no transshipment because the investigation was based on the allegation of transshipment, and CBP's actions in continuing the investigation or in not issuing a negative determination was arbitrary, capricious, an abuse of discretion and is otherwise not in accordance with law.

### COUNT 5

58. The facts and allegations contained in paragraphs 1 through 57 are restated and incorporated herein by reference.

59. CBP's EAPA procedures in this investigation violated due process. CBP relied upon certain BPI information throughout the proceeding which it did not provide TRAILSTAR or to TRAILSTAR's counsel under APO. Nor did CBP provide sufficient public summaries of BPI. Further, CBP did not maintain a proper administrative record and promptly disclose documents, such as when it relied on its Asia Wheel site visit report that CBP never placed on the record and, when Dexstar placed it on the record, CBP specifically disallowed rebuttal.

60. CBP should have provided immediate notice of the initiation of the investigation to TRAILSTAR, rather than delaying notice until the Interim Measures were issued, and CBP did not timely sign the TRLED Determination.

61. CBP acknowledges that it did not "disclose confidential information under an {APO}," which "issued at the conclusion of the investigation." TRLED Determination at 25. The CAFC makes clear that CBP acts unlawfully when it finds duty evasion without having disclosed the BPI upon which it relied with the targeted importers. *Royal Brush*, 75 F.4th at 1257-63.

62. TRAILSTAR was deprived of its due process rights by the lack of BPI access and such deprivation invalidates the TRLED Determination and Dec. 15, 2023 RR Final Decision.

Because TRAILSTAR and its counsel have not had access to the full administrative record, TRAILSTAR reserves its right to challenge any and all aspects of CBP's EAPA decision on the basis of any additional claims or theories that may arise upon a full review of the evidence.

63. Further, CBP has likewise "failed to ensure that confidential filings were accompanied by the requisite public summaries" or to provide "an explanation of why a summary is not possible" in accordance with 19 C.F.R. § 165.4. *Royal Brush*, 483 F. Supp.3d at 1305; *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1249, 1272 (CIT 2022). The extent of CBP's redaction negatively impacted TRAILSTAR's ability to fully defend its position. *Royal Brush*, 483 F. Supp. 3d at 1305.

64. CBP (and Dexstar) did not promptly release record documents relating to the April 9, 2020, initiation of the EAPA investigation to TRAILSTAR. TRAILSTAR had no notice of the investigation until the Interim Measures were released on July 15, 2020. Had CBP provided TRAILSTAR with the documents supporting the initiation of the investigation, TRAILSTAR would have had the opportunity to provide rebuttal information as well as to mitigate its AD/CVD exposure.

65. Even where CBP may have relied on information provided by TRAILSTAR, the inability to access the full administrative record deprived TRAILSTAR and counsel from fully assessing the record facts and being able to assess and make all arguments in response.

66. Finally, CBP erred in not signing the TRLED Determination on July 31, 2023, as required by statute but instead signed and issued it on August 8, 2023. CBP also issued an amended determination on August 9, 2023, but did not inform the parties as to what language was changed. CBP should be held to its statutory deadlines and also be forthcoming with any amendments to a determination.

67. CBP's affirmative evasion finding is improper and should be dismissed because CBP deprived TRAILSTAR of its due process rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

(a) hold that CBP's TRLED Determination and Dec. 15, 2023, RR Final Decision are arbitrary, capricious, an abuse of discretion, and is otherwise not in accordance with law, and violates due process;

(b) Remand CBP's TRLED Determination and Dec. 15, 2023, RR Final Decision to CBP with instructions to terminate the investigation;

(c) Order CBP to liquidate TRAILSTAR's entries of steel trailer wheels imported from Asia Wheel in Thailand without AD/CVD; and

(d) Grant such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Jordan C. Kahn*
Jordan C. Kahn
Alan R. Klestadt*

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

1201 New York Avenue, N.W., Suite 650
Washington, D.C. 20005
(202) 661-7784
-and-
*599 Lexington Avenue, Floor 36
New York, New York 10022
(212) 973-7722

*Counsel for Plaintiff TRAILSTAR LLC*

Dated: January 30, 2024